UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

TERESA CHRISTINE TAPIA,                                         18-11739-t13

    Debtor.

## MEMORANDUM OPINION

Before the Court is Debtor's motion to avoid a judgment lien on her house to the extent it impairs her homestead exemption. Judgment creditor counters that his lien did not attach to the homestead exemption, does not impair it, and therefore cannot be avoided. Having reviewed the parties' briefs and applicable law, the Court concludes that judgment lien does impair Debtor's homestead exemption and is subject to avoidance, but that the extent of the avoidance cannot be determined without an evidentiary hearing on the value of the house.

I.     FACTS[1]

Debtor filed this chapter 13 case on July 12, 2018. Pre-petition, Patrick McKnight obtained a $40,000 judgment against her in Nevada state court. McKnight domesticated the judgment and filed a transcript of judgment in Bernalillo County, New Mexico, thereby obtaining a judgment lien on Debtor's house at 8501 Northridge Ave. NE, Albuquerque, NM 87111 (the "House").[2]

Debtor values the house at $385,000, while Mr. McKnight asserts a value of $425,000. There is no agreement on value. The House is encumbered by the following liens:

---

[1] In making its findings, the Court took judicial notice of the docket in Debtor's bankruptcy case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).
[2] The lien was filed February 23, 2017.

| Lien | Value | Date Recorded | Priority |
|---|---|---|---|
| Deed of trust held by Home Bridge | $262,401.97 | 6/24/15 | First |
| McKnight judgment lien | $40,000.00 | 2/27/17 | Second |
| IRS tax liens | $71,000.00 | 9/12/17 and 11/7/17 | Third |
| Total | 373,401.97 | | |

Debtor chose the New Mexico exemptions and claimed a $60,000 homestead exemption pursuant to N.M.S.A. § 42-10-9 and § 522(b)(2). The deadline to object to the exemption has passed, Fed. R. Bankr. Pro. 4003(b), so Debtor is entitled to it. $60,000 of the House's value that is unencumbered by nonavoidable liens will be referred to as the "Homestead."

Debtor filed a motion to avoid McKnight's judgment lien as impairing the Homestead, to which McKnight timely objected. The matter has been fully briefed and argued.

II.     DISCUSSION

McKnight argues that Debtor cannot avoid his lien because it did not attach to the Homestead and therefore does not impair it. Because there is no impairment, McKnight argues, his lien cannot be avoided under § 522(f).

A.     Relevant State Statutes.

1.     Judgment liens. N.M.S.A. § 39-1-6 provides:

Any money judgment rendered in the supreme court, court of appeals, district court or metropolitan court shall be docketed by the clerk of the court and a transcript or abstract of judgment may be issued by the clerk upon request of the parties. The judgment shall be a lien on the real estate of the judgment debtor from the date of the filing of the transcript of the judgment in the office of the county clerk of the county in which the real estate is situate.

When McKnight filed his transcript of judgment in Bernalillo County, New Mexico, it became a lien on the House. *Id.; see also Scheer v. Stolz*, 41 N.M. 585 (1937) (discussing judgment liens under prior New Mexico statute).

2. The Homestead Exemption. N.M.S.A. § 42-10-9 provides:

> Each person shall have exempt a homestead in a dwelling house and land occupied by the person or in a dwelling house occupied by the person although the dwelling is on land owned by another, provided that the dwelling is owned, leased or being purchased by the person claiming the exemption. Such a person has a homestead of sixty thousand dollars ($60,000) *exempt from attachment, execution or foreclosure by a judgment creditor* and from any proceeding of receivers or trustees in insolvency proceedings and from executors or administrators in probate. If the homestead is owned jointly by two persons, each joint owner is entitled to an exemption of sixty thousand dollars ($60,000).

(italics added).

B. 11 U.S.C. § 522(f).

Debtor's motion is brought under § 522(f), which provides in part:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5);
>
> . . .
>
> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--
>   (i) the lien;
>   (ii) all other liens on the property; and
>   (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

C. Did McKnight's Judgment Lien Attach to the Homestead?

McKnight argues that the "exempt from attachment, execution or foreclosure by a judgment creditor" language in N.M.S.A. § 42-10-9 means that his judgment lien, while attaching to the House, did not attach to the Homestead. Three cases citing N.M.S.A. § 42-10-9 lend support for McKnight's position. The first is *Ranchers State Bank of Belen v. Vega*, 99 N.M. 42 (S. Ct.

1982), which addressed whether a law increasing the homestead exemption applied to a judgment lien that had attached before the effective date of the law. In ruling that the increase did not apply to the judgment lien, the court stated:

> The transcript of the United States' default judgment against Hector M. Vega was recorded in Socorro County on March 1, 1979. *The resulting lien attached to the Vegas' entire interest in the real property except their homestead which remained free of the lien.* At that point the United States became a secured rather than an unsecured creditor of Hector M. Vega and acquired a vested right in the statutory remedies then available for the enforcement of its money judgment.

99 N.M. at 44 (italics added).

Although the italicized *Vega* language is dicta, in *Albuquerque Chem. Co. v. Arneson Prod., Inc.*, 201 F.3d 447 (10th Cir. 1999) (unpublished), the Tenth Circuit relied on the language to hold that a judgment creditor's lien did not attach to a debtor's homestead. 201 F.3d 447, at *5. Because the lien did not attach, the Tenth Circuit reversed the lower courts and held that the bankruptcy court should not have avoided the lien under § 522(f), as there was no impairment.

*Vega* and *Albuquerque Chemical* were cited in *In re Cisneros*, 257 B.R. 322, 335 (Bankr. D.N.M. 2000), for the proposition that under New Mexico law, a judgment lien does not attach to a debtor's homestead.

Other Tenth Circuit cases, construing the exemption statutes of other states, have come to similar conclusions. For example, in *David Dorsey Distributing, Inc., v. Sanders*, 39 F. 3d 258 (10th Cir. 1994), the Tenth Circuit ruled that § 522(f) could not be used to avoid a judgment lien on a Utah debtor's homestead because the judgment lien did not attach to the homestead. 39 F.3d at 262. *See also Shafner v. Aurora National Bank South (In re Shafner)*, 82 F.3d 426 (10th Cir. 1996) (construing Colorado law, the court stated that "[a]s in *Sanders*, resort to 522(f) to avoid the judgment liens at issue is unnecessary because Colorado law prevented their attachment"); *see also In re Jordana*, 232 B.R. 469, 474 (10th Cir. B.A.P. 2003) (under prior version of Oklahoma

law, judgment lien did not attach to homestead, so § 522(f) is superfluous and without application).

In contrast to these cases is the Tenth Circuit's decision in *Burrus v. Oklahoma Tax Comm.*, 59 F.3d 147 (10th Cir. 1995). In *Burrus*, the court had to construe Oklahoma's homestead exemption statute and its applicability to state and federal tax liens. The statute exempts homesteads "from attachment or execution and every other species of forced sale for the payment of debts." 31 Okla. St. Ann. § 1. The district court construed the provision to mean that "the Oklahoma liens were incapable of *attaching* to the homestead property." 59 F.3d at 149 (emphasis in original). The Tenth Circuit disagreed:

> Concededly, a literal reading of the statute would seem to compel the district court's conclusion. However, read in context, we believe it is clear that the term "attachment" as used in the Oklahoma statute has a different meaning from the meaning of attachment for tax lien priority purposes.
>
> The law dictionaries reveal that there are two distinct meanings for the term "attachment." For example, *Ballentine's Law Dictionary* (3d ed. 1969) provides two different definitions: first, "A provisional remedy for the collection of a debt, which is incidental to an action against the debtor ... for the purpose of having the property available in satisfaction under execution and sale upon a judgment obtained against the debtor in the action;" and, second, "The actual attaching, that is, the seizure and disposition of the debtor's property under a writ of attachment." *Black's Law Dictionary* (6th ed. 1990) illustrates the same dichotomy. One definition of attachment is: "A remedy ancillary to an action by which plaintiff is enabled to acquire a lien upon property or effects of defendant for satisfaction of judgment which plaintiff may obtain." another meaning offered in *Black's* is: "The act or process of taking, apprehending or seizing ... property...." Read in context, it seems clear that the Oklahoma statute uses the word "attachment" in this second sense of the word, while it is the primary meaning that is relevant in the tax lien context.

*Id.*

The Court is persuaded by the Tenth Circuit's reasoning in *Burrus* and concludes that the New Mexico statute should be read the same way. In N.M.S.A. § 42-10-9, the phrase "exempt from attachment, execution or foreclosure by a judgment creditor" refers to the creditor remedy of

attachment,[3] not to encumbering real property.[4]

The Court's construction gives meaning to the phrase "foreclosure by a judgment creditor" because it prevents judgment creditors from foreclosing their valid liens on homesteads. In contrast, the construction advocated by McKnight would render the foreclosure language superfluous: if judgment liens do not encumber homesteads, then creditors could not foreclose them. Construing a statute in a way that renders a portion of it surplusage should be avoided. *See* Scalia and Garner, *Reading Law*, p. 175 (2012) (Canon 26, Surplusage Canon—If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.").

Finally, the Court's construction of § 42-10-9 is bolstered by the fact that the main creditor remedies involving real property are attachment, execution, and foreclosure. The phrase at issue makes sense when "attachment" is defined as a creditor remedy, but not when defined as encumbering debtor's property. In that vein, the Court concludes that the proper way to read the phrase is that homesteads are exempt from (i) attachment by a judgment creditor; (ii) execution by a judgment creditor; and (iii) foreclosure by a judgment creditor.

In sum the Court concludes, persuaded by the reasoning of *Burrus* and the language of N.M.S.A. § 42-10-9, that McKnight's judgment lien encumbers the Homestead and therefore is subject to avoidance under § 522(f).

D. <u>Even if McKnight's Judgment Lien Did Not Attach to the Homestead, it Nevertheless</u>

---

[3] *See, e.g.,* N.M.S.A. § 42-9-1 et seq. (Attachment). Real estate can be attached. N.M.S.A. § 42-9-17(B) ("when lands . . . or estates in real estate . . . are to be attached . . . .").
[4] The fourth definition of attachment in Black's Law Dictionary is "the creation of a security interest in property . . . ." Black's Law Dictionary (10th ed.). This definition is not the one intended by the legislature, the Court concludes.

Impairs it and Can be Avoided Under § 522(f).

Assuming arguendo that McKnight's judgment lien did not attach to the Homestead, it nevertheless "impairs" the exemption and is subject to avoidance under § 522(f).

    1.    <u>McKnight's Judgment Lien "Fixed" on the House</u>. First, there is no dispute that McKnight's judgment lien encumbers at least the non-Homestead portion of the House. *See Vega*, 99 N.M. at 44; *Albuquerque Chemical*, 201 F.3d 447, at *5; *Cisneros*, 257 B.R. at 335. Thus, the initial requirement for lien avoidance ("the debtor may avoid the fixing of a lien on an interest of the debtor in property") is satisfied. § 522(f)(1). *See Cisneros*, 257 B.R. at 339-40;[5] *In re O'Sullivan*, 2015 WL 3526996, at *2 (Bankr. W.D. Mo.), vacated on other grounds, 841 F.3d 786 (8th Cir. 2016) (to the same effect, citing *Cisneros*).

    2.    <u>McKnight's Lien Impairs Debtor's Homestead</u>. Once it is clear that the debtor is entitled to the exemption and the "fixing of the lien" requirement is satisfied, the only remaining question is the extent to which the lien impairs the exemption."

McKnight argues that his lien cannot impair the Homestead because it did not attach to it. McKnight cites *Sanders*, *Shafner*, *Jordana*, as well as *In re McRoy*, 204 B.R. 62, 63 (Bankr. D. Kan. 1996) (Kansas law), in support of his position.

McKnight's reliance on these cases is misplaced. In 1994, Congress amended § 522(f) to include § 522(f)(2)(A), which defines "impairment." In *In re Coats*, 232 B.R. 209 (10th Cir. BAP 1999), the bankruptcy appellate panel discussed the case law prior to 1994 and the purpose of the 1994 amendment to § 522(f). It stated:

> By defining "impairment," the amendment also clarifies that a judicial lien on a

---

[5] "§ 522(f) permits the debtor to 'avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption....' In other words, the literal terms of § 522(f) mandate that if the lien attaches to *any* portion of the debtor's interest in the property (not just the exempt portion), then the lien may be avoided to the extent it impairs the exemption." 257 B.R. at 339-40.

property can impair an exemption even if the lien cannot be enforced through an execution sale, thereby supporting the result in *In re Henderson,* 18 F.3d 1305 (5th Cir.1994), which permitted a debtor to avoid a lien that impaired the homestead exemption even though the lien could not be enforced through a judicial sale. . . . Thus, it appears that whether a lien "impairs" an exemption may be determined in every case by applying the § 522(f)(2) formula, regardless of the state law limitations on the exemption.

232 B.R. at 214. *Coats* addressed Oklahoma law, which at the time allowed judgment liens to attach to homesteads but prevented judgment creditors from foreclosing the liens. The court held:

> Thus, it appears that whether a lien "impairs" an exemption may be determined in every case by applying the § 522(f)(2) formula, regardless of the state law limitation on the exemption.
>
> . . .
>
> Pursuant to *Owen*[6] and the legislative history to § 522(f), we conclude that Section 706[7] is pre-empted by the policy of § 522(f) that judicial liens on exempt property should be avoided to give the debtor a fresh start, notwithstanding the fact that such liens cannot be foreclosed under state law while the property remains a homestead.

232 B.R. as 214. The court also stated that the purpose of lien avoidance under § 522(f) is so debtors may "avail themselves of the full benefit of the exemption, notwithstanding state law that purports to except those liens from the exemption." *Id.* at 213.

*Cisneros* also makes clear that *Sanders, Shafner, Jordana,* and *McRoy* have been superseded on this point. Judge Starzynski held that the 1994 amendments allowed debtors to avoid judgment liens under § 522(f) even if they did not encumber/attach to the homestead:

> This Court is comfortable that, when the Tenth Circuit is confronted with the issue of whether [§ 522(f)] as amended is "superfluous and without application" to the debtor's homestead exemption, it will rule that the 1994 amendment effectively overruled the Tenth Circuit's interpretation of whether the lien actually impairs the exemption.

257 B.R. at 336. *See also In re Fakhari*, 554 B.R. 250, 261 (Bankr. D. Kan. 2016) (it is appropriate

---

[6] *Owen v. Owen*, 500 U.S. 305 (1991).
[7] Okla. Stat. Ann. Tit. 12 § 706(B)(2).

-8-

to avoid a judicial lien even if it did not "attach" to the homestead, citing *Cisneros*); *In re O'Sullivan*, 2015 WL 3526996, at *2 (Bankr. W.D. Mo.), vacated on other grounds, 841 F.3d 786 (8th Cir. 2016) (whether lien "attached," it was "fixed" for § 522(f) purposes on debtor's house, impaired the exemption, and could be avoided); *see generally In re Gregory Rockhouse Ranch*, 380 B.R. 258, 262–63 (Bankr. D.N.M. 2007) ("Transcripts of judgment are the type of judicial lien that is avoidable under 11 U.S.C. § 522(f)").

     3.  <u>To the Extent State Law Points to a Different Result, it is Pre-empted</u>. McKnight's argument that his judgment lien is unavoidable undermines Congressional intent to give debtors a fresh start. If there is a conflict between state and federal law on the issue, federal law prevails. "Whether a judicial lien "impairs" a debtor's exemption under § 522(f) is a question of federal law." *Coats*, 232 B.R. at 212, citing *Heape v. Citadel Bank (In re Heape)*, 886 F.2d 280, 282 (10th Cir. 1989). The *Coats* court held:

> while federal law permits states to define what property is exempt, federal law governs the availability of lien avoidance, and pre-empts any state law that limits the scope of its exemptions in a way that would interfere with the 'fresh start' policy served by the avoidance of certain types of liens under § 522(f).").

232 B.R. at 209. Similarly, in *In re Thames*, 2010 WL 5376208 (Bankr. E.D. Okla.), the court stated:

> this Court finds the law well-settled in this circuit that bankruptcy law preempts state exemption law regarding lien impairment, and that a judgment lien may be avoided pursuant to 11 U.S.C. § 522(f) as an impairment of a homestead exemption.

2010 WL 5376208, at *3. *See also In re Morinia*, 2008 WL 5157501 (Bankr. D.N.M.) (citing and following *Coats*).

As shown by the language of § 522(f) and the legislative history cited in *Coats* and *Cisneros*, Congress wanted to give debtor the unfettered ability to avoid judgment liens that in any way interfere with the full realization of their homestead exemptions. Arguments like McKnight's

-9-
Case 18-11739-t13    Doc 51    Filed 02/11/19    Entered 02/11/19 17:11:56 Page 9 of 11

to avoid a judicial lien even if it did not "attach" to the homestead, citing *Cisneros*); *In re O'Sullivan*, 2015 WL 3526996, at *2 (Bankr. W.D. Mo.), vacated on other grounds, 841 F.3d 786 (8th Cir. 2016) (whether lien "attached," it was "fixed" for § 522(f) purposes on debtor's house, impaired the exemption, and could be avoided); *see generally In re Gregory Rockhouse Ranch*, 380 B.R. 258, 262–63 (Bankr. D.N.M. 2007) ("Transcripts of judgment are the type of judicial lien that is avoidable under 11 U.S.C. § 522(f)").

    3.  <u>To the Extent State Law Points to a Different Result, it is Pre-empted</u>. McKnight's argument that his judgment lien is unavoidable undermines Congressional intent to give debtors a fresh start. If there is a conflict between state and federal law on the issue, federal law prevails. "Whether a judicial lien "impairs" a debtor's exemption under § 522(f) is a question of federal law." *Coats*, 232 B.R. at 212, citing *Heape v. Citadel Bank (In re Heape)*, 886 F.2d 280, 282 (10th Cir. 1989). The *Coats* court held:

> while federal law permits states to define what property is exempt, federal law governs the availability of lien avoidance, and pre-empts any state law that limits the scope of its exemptions in a way that would interfere with the 'fresh start' policy served by the avoidance of certain types of liens under § 522(f).").

232 B.R. at 209. Similarly, in *In re Thames*, 2010 WL 5376208 (Bankr. E.D. Okla.), the court stated:

> this Court finds the law well-settled in this circuit that bankruptcy law preempts state exemption law regarding lien impairment, and that a judgment lien may be avoided pursuant to 11 U.S.C. § 522(f) as an impairment of a homestead exemption.

2010 WL 5376208, at *3. *See also In re Morinia*, 2008 WL 5157501 (Bankr. D.N.M.) (citing and following *Coats*).

As shown by the language of § 522(f) and the legislative history cited in *Coats* and *Cisneros*, Congress wanted to give debtor the unfettered ability to avoid judgment liens that in any way interfere with the full realization of their homestead exemptions. Arguments like McKnight's

(the lien does not attach) or the one by Lakeside State Bank in *Thames* (the lien does not impair the exemption because it cannot be foreclosed) must give way to federal law on lien avoidance. To the extent New Mexico exemption law allows the argument that judgment liens cannot be avoided because they do not impair the exemption, it is pre-empted by § 522(f).

E.     Determining the Extent of the Impairment/Avoidance.

The three liens on the House, together with Debtor's $60,000 homestead exemption, total $433,401.97. The priority of the judgment lien does not appear to matter. *See* § 522(f)(2). The judgment lien should be avoided only to the extent it impairs the Exemption. *Sanders*, 39 F.3d at 261. In this case, the Court will avoid McKnight's judgment lien to the extent the House is worth less than $433,402. As there is no stipulation on the House's value, the Court will set a hearing to determine it.

F.     Preservation of Lien Under § 551.

If avoiding McKnight's judgment lien would simply allow the IRS lien to move up in priority, then lien avoidance would be futile. To address that problem, 11 U.S.C. § 551 provides:

> Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

Section § 551 preserves avoided liens for the benefit of the estate to prevent "junior lienors from improving their position at the expense of the estate when a senior lien is avoided." 5 Collier on Bankruptcy ¶ 551.01 (16th ed.).

III.     CONCLUSION

The Court finds that McKnight's judgment lien is subject to avoidance pursuant to § 522(f), the extent of which depends on the value of the House. The avoided lien will be preserved for the benefit of the estate. The Court will schedule a hearing so the value of the House may be determined. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: February 11, 2019

Copies to: counsel of record